Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 19-1191, United States v. Alexis Candelario-Santana. David Runke Good morning. I am David Runke. I appear this morning for the appellant, Alexis Candelario. And Chief Judge Howard, I'd like to reserve three minutes of time over my 15 minutes for rebuttal. Thank you, Your Honor. It has been more than six years since a federal jury sitting here in San Juan returned a verdict in a federal capital prosecution mandating a life sentence for appellant Alexis Candelario-Santana. The jury's verdict required no intervention from the court. The jury's verdict required no motion by the defendant. The jury was given a verdict sheet that contained three options. There were 16 capital counts, as I'm sure the court knows, in this case involving eight homicides, each charged on a different, both charged on, all charged on two different legal theories. So the jury had to elect 16 or make 16 decisions on appellant's exposure to a sentence of death. The jury was first given the option of determining by unanimous vote that the defendant should be sentenced to death. The jury on all 16 counts said no to that. The jury was then given the option of sentencing the defendant to life unanimously. And the jury said no to that option on 16 occasions. And finally, the jury was presented with this option. After due deliberation, we are unable to come to unanimous agreement on the issues of punishment. We understand that the court will oppose a sentence of life imprisonment without the possibility of release. And 16 times, the jury said yes to that option. Suppose in option three that it would have stopped after the first sentence? The, we would not, the understanding is something that the court felt it was important that the jury have. But the result would have been the same, respectively, I think, whether the second sentence appeared on the verdict sheet or not. The operative legal fact is the inability to come. I don't understand how that argument can succeed if you stop at the first sentence because you couldn't even argue at that point that the jury knew that the court would have imposed the life sentence. Yeah. And that simply is a fact that is part and parcel of the case that the jury did know that. And then as a matter of law, and I want to be sure we are all on the same page on that, the Federal Death Penalty Act of 1994, which is the act under which appellate was prosecuted, was interpreted definitively by the United States Supreme Court in Jones v. United States to mean that when a jury was not unanimous on the issue of punishment, the result would be that a, the sentencing function reverted to the trial judge who could impose any sentence but not death, any sentence up to life imprisonment but could not impose a sentence of death. In other words, that finding terminated, in this case, appellant's jeopardy of receiving a sentence of death. I mean, the features that were present in this case. But how is it unlike the Pennsylvania statute in that regard, the Zadazan statute? The difference is in how the Supreme Court viewed the Pennsylvania statute. They viewed the result in that case as a procedural outcome, not a jury's finding, but procedural. Because as we understand from the history in Zadazan, what took place is the jury, after a very short period of deliberation, reported itself deadlocked nine to three in favor of a life verdict. Under Pennsylvania law, a litigant has the right at that point to request that the judge terminate deliberations and impose a life sentence. And as the Supreme Court noted in Zadazan itself, what that involves is the court has a motion from a party, applies a rule of law to a certain set of facts that are presented, and the judge makes a legal decision as to what the result would be. So the sentencing decision in Zadazan was not the jury's. It was the judge ruling on a motion, and the court also cited to an earlier example of that kind of procedural steps in the Scott case, that step-by-step, it's a procedural, it's not the jury's decision. Then you must be saying, it seems to me, that the federal statute means, and Congress meant, that a minority of jurors could determine punishment. That's absolutely correct, and that's not just what I'm saying. So there doesn't have to be a unanimous verdict on punishment, and the minority could govern. So taking to its extreme, you could have 11 for the more severe penalty and one holdout. Because the 11 know what the result is going to be, there's still nothing they can do about it. That's right. They can deliberate, and the one thing that the judge in this case instructed the jurors to do is to, before you conclude that. But how could that be a jury determination, a voluntary decision for life, if you have 11 who are for death? But the way the statute works, there's nothing they can do about it. That's the way the statute was written by Congress, and that's not my saying it, or that's not even something that's a matter of argument. It's what the United States Supreme Court said in Jones. This is what Congress intended. Congress intended exactly that extreme example that Your Honor proposes, whether it's 11 to 1 for death or 11 to 1 for life. What I'm getting at here is for double jeopardy purposes, I thought the point of Satizan was that you do not have a jury finding of acquittal at that point. The point in Satizan is that it was not a jury decision, and the difference in this case is that it absolutely is a jury's decision. A jury reporting in a federal death penalty case, we are unable to come to a unanimous verdict, as they did in this case. And when the verdict was announced in this case, nothing additionally had to be done. The defense counsel- The judge had to intervene and make a decision at that point as to what the appropriate penalty was going to be. Well, except that the judge had given one of the things that is unusual, not unusual. This is a very unusual situation, to say the least. But one of the things that is particular to this case is that the trial judge gave to the jury the authority to determine if they were not unanimous, so long as they did not reach that conclusion without having complied with the instruction to deliberate. And so there was nothing further for the judge to do. Could the judge have changed his mind on the penalty? The judge went ahead and sentenced the- That doesn't answer the question. Could the judge at that point have changed his mind? I mean, because the defendant at that point hadn't even allocated- I mean, everyone associated with this case, the government included, accepted that this was how it would proceed. For example, when the jury came back with its verdict and announced its verdict, no one from the government stood up and said, let's inquire whether further deliberations would ease matters or help matters or get to unanimous verdict. And the reason for that is that the court had ruled that it would be the jury's determination. And when a jury rejects a case for death and jeopardy terminates on a case for death- The jury didn't do that, at least not unanimously. Well, the decision of the jury rejected the death penalty. There was no decision to that respect, in that respect. That requires me then to talk a little bit more about what Jones also said, that this is not an ordinary, quote, unquote, hung jury mistrial. In fact, if we look at the history of Jones, what occurred in Jones is that the defense, in that case, sought an instruction in a Texas federal capital case that if the jury was not unanimous, the court would sentence the defendant to a term of lifetime imprisonment. The trial judge rejected that instruction. The defendant was, in fact, sentenced to death. It went to appeal to the Fifth Circuit, which held that that instruction would have been improper as a matter of law, because if there was an inability to agree, there would simply be a mistrial and another penalty phase. And therefore, the instruction was not correct. And the Supreme Court rejected that, saying that that's a final determination, that there is no mistrial, there is no additional proceedings that can take place. It is simply the end of jeopardy, the end of the road, so far as the defendant's exposure to a sentence of death. And that's what happened in this case. The jury returned its decision. The jury was asked, each member, in these terms, ladies and gentlemen, is that your verdict? And every member of the jury responded that that was, in fact, their verdict, meaning that's what they believed that they had agreed to as members of a jury. Perhaps if you pointed to an individual juror. They agreed not to agree. Well, perhaps if you pointed to an individual juror saying, I agree that that's our verdict, although that was not my personal opinion, but that doesn't matter when a judge gives a jury the authority to make that decision, which the jury did in this case. That is the end of it. Is this a one-off? I mean, are you arguing that we should just look at the unique circumstances of this case because the court, with the agreement of the parties, opted to go to sentence number two with option three? I'm looking at this case as to what the jury decided. A one-off? The option three. And the jury could have decided option two. The jury could have chosen option one. I guess I'm trying to ask, are you saying that beyond this case, this case has no implications because of the unique circumstances of what happened here? I don't know what implications this has beyond this case. It's an extremely unusual situation, to say the least, that we're back on a retrial. The government is again seeking a sentence of death. And I know that Chief Judge Howard and Judge Ferrer were on the opinion, the original opinion reversing the underlying convictions. And so the jury, by its decision, took death off the table. And what occurred in the case is that the trial judge scheduled a sentencing proceeding, just like any other non-capital sentencing proceeding, and Mr. Candelario was sentenced to multiple terms of mandatory life in prison. And I want to make that point clear that because of the violent crime and racketeering convictions, which carry with it a mandatory minimum sentence of life, and that the judge had no choice and was never going to sentence him to anything less than death. I see my red light is on. Yes, you've reserved some time. And unless you have further questions, I'll reserve the time. Thank you, Your Honors. Good morning, Your Honors. Amos A. Scott Anderson on behalf of the government. Can you just clarify for me, I'm still trying to figure out if Option 3 is unique to this particular case? I don't know. I would have to know what other death penalty cases, what they did in their verdict forms. I don't know if other cases in other jurisdictions, they add that language, which is not necessary, to Option 3. So I don't know if this is unique just to Puerto Rico. But what I do know is that the jury in this case did not say no to death and did not say no to life. They said we can't decide. When you say unique to Puerto Rico, do you know of other cases in this jurisdiction where that approach was used that was used here? I do not, Your Honor. Or anywhere else other than the search? I do not, Your Honor. It seems like the problem was created by the second sentence. Correct. Because clearly if it was just an Option 3 which says essentially jury is going to be making no decision, we wouldn't be here. Correct. Absolutely correct. I agree with Your Honor. But that sentence was put in for whatever reason. I was not the trial attorney on that case. I will be on the retrial. So I don't know why it was put in. But I think what's important here is the decision made by the jury. Do you have any opinion as to whether the judge had the authority after the conviction to change his mind? In terms of a life sentence? Yes. Could the court have imposed something lesser? Yes, because there are counts of conviction which call for, it could be a sentence of any term up to life, any term of years up to life. So I believe, yes, the judge had that authority if he wanted to. On some of the counts he could have imposed 50 or 70, whatever he decided that's less than life. But I think the important point here is there was no acquittal on death. And that's what needs to happen for jeopardy to attach. The jury, now the jury nor the judge acquitted of death. As a matter of fact, the jury found every single statutory factor needed for a death penalty. So that weighs heavily against an argument that they acquitted the defendant of death. The jury was unanimous that they couldn't reach a unanimous verdict. Correct. And they were unanimous with the knowledge that imposition of life would occur. Correct. And they had that knowledge throughout the whole trial. But yet they could not agree at the end of the day whether that was the sentence that should be imposed. All they're saying is we know what's going to happen, but we can't agree if that's right or if that's what should happen. But that's not an acquittal of a death penalty. They may be saying that. I think that goes back to the earlier hypothetical where you have 11 one way and one the other way. That may be what they're saying. What they may be saying is this is a compromise. Some of us see some of the underlying facts one way. Some see it the other way. The verdict that we want is life. That may be what they're saying. Then they would have chose option two because that's where they would have affirmatively have stated we agree with a life sentence. I thought I thought no way. What does option two say? Option two is we the jury by unanimous decision vote for life. Right. So what I'm positing here is that we may not all agree on all of the factors, but we know what the consequences are. So we unanimously choose option three. We don't know what they're saying. Well, we do because they're saying we are unanimous that we can't agree what the sentence should be. Well, that's the first sentence of option three. And then they're saying and we acknowledge that what's the course of it. Right. So one version is there's nothing we can do about it, those of us who would rather have the death penalty imposed. There's nothing we can do about it, but we know that's what's going to happen. Or they might be saying we acknowledge it and this is the result that we vote for. Unanimously, we're voting for option three. Which is we can't decide. That's not in the puddle of death. Isn't there actually an option four, which is they couldn't agree on any of the three and they would have been totally hung? If that was presented to them, I'm sure they could have sent out a note saying we can't choose any of these three. But they didn't. And so that's the point, they didn't. And we have to figure out what three means in the context of them actually being hung and unable to agree on any of the three. Yes, but even if, well, no. We shouldn't be trying to guess the jury's meaning. Because the jury told us in no uncertain terms, they told us we cannot agree whether death or whether it should be life. And that's a hung jury, the same as Saddam. It's a jury that cannot, whether it's nine to three for life, 11 to one for death, whether they send out a note or put it in a verdict form, it's the same. It's a hung jury. We cannot make a decision. Therefore, we're not acquitting the defendant of death, which is necessary, in order for jeopardy to attach. And that did not happen here. So in Satterzan, which I think in most respects was a five to four decision? Six to three for life. It was six to three? Correct. In that particular case, as I understand it, the fundamental ruling is that when you get a reversal of the conviction that allows for a retrial, and there has not been a separate determination by the jury with respect to the punishment side of it, there hasn't been a unanimous verdict, there's no jeopardy that attaches to that second part of the trial. In this case, correct me if I'm wrong, didn't the case go back because there was a structural error? There had been a closure of the courtroom? Yes, that was the reason for the reversal was the effective closure of the courtroom. So what I'm worried about, or one of the things I'm worried about with respect to your position is, if a defendant is put through a procedure, a process in which there is a structural error like that, not something to do with the trial itself that might go to guilt or innocence or the fundamental fairness, but things that go to sort of the American system of trials. And then they find out at the end that they were not given a true American trial. But because they got life imprisonment, look at the Hobson's choice they have now. I can't go back and actually have, you know, for example, if they were convicted in front of a kangaroo court but didn't know it. When they find that out, they have to put death back on the table themselves. And I find that very troubling. Do you have a response to that? I see the court's point. It's more of a due process argument. That's always a good start. I'm not sure if I have a response to the question, only to say the Supreme Court will eventually have to address that issue. So doesn't that give the dissenters in Satterzan's point about a person having this stuff, you know, literally hanging over his head, doesn't it give more weight to that in this circumstance? No. You can help me maybe on something. Point two, I'd like to read them because we've been talking about them and I'd like to go to the language. It says, we determine by unanimous vote that a sentence of life imprisonment without possibility of release shall be imposed. They voted no. The second sentence of the third option reads, we understand that the court will impose a sentence of life imprisonment without possibility of release. Seems like the same language. Understanding what will happen and agreeing that that's what should happen are two different things. If they agree that that's what should happen, they would have chose option number two. By unanimous consent, we state that life imprisonment should be imposed. The second sentence of the third option is really superfluous language. Maybe superfluous was, but it seems to me not to be superfluous because they're exactly the same language as number two. Yeah, but all they're saying in option three is we understand what the court's going to do. Not that we agree with it. What they're saying is we can't agree whether that should be the punishment.  Therefore, as your honor said, with defense counsel, there was no result. There was no decision by this jury as to punishment whatsoever. But it was unanimous that they didn't have to be unanimous for options one and two because they had option three and they were making a knowing choice. I disagree. They were unanimous in that they could not make the first two choices. That's all they're saying in option three. They're saying that they're voting in that manner because they believe that's what's going to happen after the verdict. I disagree. We disagree. It's our position that they're simply saying we know what's going to happen, not that we agree with it. Number two would be we agree with it. And therefore, jeopardy would attach because now they've acquitted the defendant of the death penalty. But here they didn't choose one. They didn't choose two. They didn't choose anything. And therefore, jeopardy did not attach to this case. And therefore, the district court made the correct decision when it denied the defendant's motion on double jeopardy crimes. Did you look to see if there were any other cases with these unique facts in any other circuits? No. Let me beat the dead horse a little bit more. They voted against the death penalty. There's no question about that. I disagree. Well, they determined that the death sentence should not be imposed. No, what they said is we – I'm sorry. Go ahead, John. You're right. Let me read it. We determined by unanimous vote that a sentence of death shall not be imposed. No. What does that mean? It means that they could not unanimously agree whether it should be imposed. Same as number two. They were not unanimously in agreement that life should be imposed. And so number three is the default option. But it doesn't mean they agreed with it. Then they go on and say that we think that our actions will result in life imprisonment. And no one's disputing that, that they were aware from the very beginning of this trial what would happen if they could not come to an agreement. But, again, that does not mean they agreed with it. If they did, they would have chosen number two. They would have said we knew it was going to happen and we agree it should happen. We think that is the right sentence and, therefore, we are choosing option two by unanimous verdict that this is the sentence that should be imposed. But they didn't do that. They said we can't decide. There's no decision in this case by the jury whatsoever. But isn't your brother counsel's point – and I don't mean to speak for him. He'll correct me if I'm wrong. But isn't his point that the statute itself, if you will, converts this to a jury's verdict? These are the only options and we're not going to get out of one of these trials without a verdict in some respect. No. The jury has asked what they think. In other words, I think his point is that you don't need a unanimous verdict on this third point. It's actually helpful that the jury knows that and that that's the way the statute's intended to work. And it's substantive, not procedural. I disagree because the third option is not an option. It's the jury saying we can't choose. And so the statute then, by default, passes to the judge for sentencing. But even the judge, when he sentenced the defendant to life, did not acquit him of death because, at that point, death was no longer an option. So the judge did not make any findings that acquitted the defendant of death, neither did the jury. The jury just said, we can't do this. We don't know what should happen. And the judge said, okay, I'm going to do it because that's what the statute tells me I have to do. So that answer reminds me, takes me back to a question that Judge Thompson asked earlier. And I'd like to follow up on that. I believe you said that the judge could have had the authority to impose a lesser sentence than what was imposed. Correct. Except in this case, the judge took that off the table. So the jury was operating under a set of instructions, really, and really did know what the outcome would be. And so why can't we say that the third option here really is the jury voting for the third option? The only choice that the judge gave them. In other words, there may even be an argument that had, I don't know who would get to make the argument, I guess you, that if the judge had imposed a lesser sentence, he'd be violating his own instructions, right? And then we don't know what the jury really had in mind at the time. Yes, he'd be violating his own instructions. I don't know if there's a remedy for that for the government. But, again, simply knowing what was going to happen, they had the opportunity to say, and we agree. But they didn't. They said, we know it. The judge told us. But we still cannot agree that that should be the appropriate sentence in this case. And, again, no acquittal. Any further questions? Well, I have three seconds left. Thank you, Your Honor. I'd like to just respond to the question of are there other cases like this and understand what I think the answer to that should be. There are cases all around the country where federal judges in federal death penalty cases inform jurors that if they are unable to agree on a unanimous verdict, there will be a life sentence imposed. That's within their discretion, and it's done with some regularity. What is unique about this case, and where I know of no other case like it, is where a jury found that they were unable to agree unanimously. The defendant was sentenced to a term of usually life imprisonment. Those underlying convictions were then reversed and remanded for a new trial, and now the double jeopardy bar to a retrial is imposed. I know of no other federal case that has ever presented that precise set of circumstances, which is what we have here. And a second discussion on the issue of did the judge have an option on his sentencing? Could he have, quote, unquote, changed his mind and imposed less than a life sentence? The short answer to that is simply no. Mr. Candelario was convicted of eight counts of what's called violent crime in aid of racketeering murder. Vicar, as it's sometimes called, Section 1959 of Title 18, the sentence for a conviction of vicar is either life imprisonment or the death penalty. And there was no option on eight counts of conviction, so life was definitely the option that was left. As a matter of law, the jury's verdict in this case entitled Appellant to a life sentence and took death off the table. And I think maybe the better way to think of it is that the verdict meant death was no longer an option, and certainly life without release was the only other option practically and realistically available to the judge in this case. This is a verdict. Satizan can be thought of as a case with a note, followed by a motion, followed by fact finding, all of which are functions of the trial judge. And the decision in that case to impose a life sentence was the trial judge's, not the jury's. There's no way the jury in this case misunderstood that this was anything but a verdict. It's on the verdict sheet. They were polled as to whether this is their verdict. And I'm out of time, and I thank the court for listening, and thank you. Very well. Thank you all. Thank you.